Slaughter, J., concurring in part, dissenting in. part. I respectfully dissent from the Court’s decision to reduce Taylor’s sentence from life without parole to a term of years. There can be no doubt that reducing Taylor’s sentence is within the Court’s power. But sometimes the better use of power is to'withhold its exercise. I would affirm Taylor’s LWOP sentence because he does not satisfy our longstanding test for granting relief under Appellate Rule 7(B), which looks to both the nature of the offense and the character of the offender. On this record, Taylor fails both prongs. Taylor’s offense was the - lying-in-wait murder of another seventeen-year-old, J.W., whom Taylor gunned down by shooting him in the back as the victim tried to run away. It was, as the Court observed, a “tragic and senseless” crime. But it was more than that. It was also a depraved and heinous crime, perpetrated against an unarmed and vulnerable juvenile who was lured into a death trap, where Taylor ambushed him. His crime reflects an utter disregard for human life. Had it been an adult, and not Taylor, who shot J.W. in the back as he ran away, we would have no occasion to find the offender deserving of a more lenient sentence; indeed, the adult offender would be eligible for the death penalty. Nor, despite Taylor’s age when he murdered J.W.—seventeen years, nine months, sixteen days—is Taylor entitled to 7(B) relief under the character-of-the-offender prong. Taylor had a significant juvenile history that, as the State says, “escalated in violence” over time. He was adjudicated a delinquent for criminal trespass; for battery resulting in bodily injury; and for theft of a firearm, dangerous possession of a firearm, and carrying a handgun without a license. Taylor was sentenced to the Indiana Department of Correction and placed at a juvenile boot camp. He was released from.the boot camp in November 2015, only weeks before killing J.W. later that month. Moments after killing J.W., Taylor threatened D.G. by pointing a gun at her head and telling her that she would face the same fate if she squealed: “bitch[,] if you say anything I’ll kill you.” Later, after Taylor had been implicated, arrested, .and was being held on J.W.’s murder, Taylor encountered D.G. at the same juvenile facility where they were both being detained. He told D.G. he should have killed her when he had the chance. Taylor’s communicated threats and “regrets” to D.G. are not the words of a remorseful, repentant offender with a redeeming .character deserving of judicial mercy. After hearing all the evidence, including evidence of Taylor’s age and upbringing, the jury unanimously recommended life without parole. The trial court then imposed that sentence, see I.C. 35-50-2-9(e)(2), and made findings amply supported by the record underscoring why Taylor is undeserving of 7(B) relief today, including: • Taylor’s “true nature ... reflects irreparable corruption.” • His “criminal history and his behavior before, during and after he shot the victim, is [sic] indicative of one who lacks conscious [sic], who is unrepentant and who, if given another opportunity, would do exactly the same thing to another unwary victim.” Although I disagree with the majority’s resolution of the LWOP issue, I am not unsympathetic to its concern with leaving intact a sentence that guarantees an offender will die in prison for acts committed as a juvenile. But Taylor is only the fifth juvenile 'in state history to receive an LWOP sentence. The infrequency with which these sentences are given to minors suggests that both prosecutors and juries take their responsibilities seriously and proceed cautiously before seeking and recommending what for juveniles is the ultimate punishment. As the Court notes, we upheld an LWOP sentence in Conley v. State, a case we described as involving “ ‘a drawn out crime’ of ‘unimaginable horror and brutality.’ ” 972 N.E.2d at 876.1 agree with that characterization. But I disagree that Conley set a floor below which any juvenile whose offense is thought to be any less monstrous will obtain 7(B) relief. That is the trend and, I fear, the implication of today’s decision. As the Court recognizes, the point of Rule 7(B) is to “leaven outliers”, not to achieve some perceived correct sentence, whatever that means. Four other juvenile-LWOP sentences are an insufficiently small sample size from which to draw any meaningful conclusions about which juvenile-murder sentences are outliers and which are in the mainstream. The Court acknowledges that Taylor’s LWOP sentence was “lawful”, and that our 7(B) review of a sentence “boils down to [our] ‘collective sense of what is appropriate.’ ” I would affirm Taylor’s LWOP sentence both because it was lawful and because I prefer the jury’s “collective sense of what [sentence] is appropriate” to our own. From the Court’s decision to reduce Taylor’s sentence to a term of years, I respectfully dissent,